Mr. Somerfield, you may proceed. May it please the Court. This appeal, the second one in this matter, essentially involves a single issue. Does the medullary canal of a human long bone extend the entire length of the long bone? Tranquil submits that it does not, but the District Court disagreed, finding in a revised decision on claim construction that, in fact, the medullary canal extends the entire length of the long bone. Now in originally construing this term, the District Court relied upon the teachings of a medical text, which made clear that the diaphysis of a long bone, and not the long bone itself, contains a large marrow or a medullary canal. And we quote the judge's decision originally in that text at page four of our blue brief. As an illustration of the text's description of the medullary canal, the District Court appended as Exhibit A to its original claim construction decision, this diagram of a human long bone from the Ross text, Histology of Texanapolis. And as we can see from the very diagram the judge decided to use originally, what's labeled the marrow cavity or medullary canal here indeed does not extend from the very top to the very bottom of the long bone. Instead it ends at the spongy bone located at the top and bottom of the bone. So at the very least, we know the District Court erred when it changed its decision in light of the very extrinsic evidence it relied on to find that the medullary canal indeed extended the entire length of the long bone. So the case went up on appeal the first time, and on remand from the first appeal, the parties briefed the issue of infringement for summary judgment, and the District Court changing its mind said, no, when I appended this diagram to my original decision, it was not intended to show the medullary canal does not extend the length of the long bone, and in fact I find that it does. And then based on that finding, the District Court evaluated the evidence and said, well, Tranquil has not done measurements of the fit requirement for the prosthesis and surrounding cement mantle all the way up to the top of the long bone, which was true. And because of that, and because of my revised claim construction, I find that there is no infringement. But there's no dispute, is there, that there's no infringement if it goes beyond the diathelceal segment? No, there's no dispute if the medullary canal goes to the top of the long bone. As we'll see when we look at Dr. Hodges's- In other words, your view depends, I mean, getting by the question of whether the District Court changed its mind or not, your view depends on the conclusion that only that one region is covered by the claim. The medullary canal extends basically up to the spongy bone, yes. In other words, if the District Court is right in its claim construction, we do not prevail. But counsel, the claim itself defines the medullary canal in terms of the, I'm not going to get these names right- Metathecial and diathecial regions. Thank you. And we do agree that- Metathecial and epithecial. Metathecial and epithecial. Epithecial. Yes. That's what the claim says. Yes. There are three segments talked about, the metathecial, the epithecial, and the diathesis or diathecial region. And we agree that here as well, the medullary canal will extend up into the metathecial and epithecial regions. The problematic thing with the District Court's decision is he said that it goes all the way to the top of the bone and that it's coextensive with the length of the long bone. We agree that the medullary canal will go into the epithecial and metathecial regions and for those segments of the medullary canal in those regions- If it comes to 70% in those regions, there's infringement and 90% in the diathecial, but you're saying the medullary canal doesn't have to go all the way to the end, shouldn't it be construed as? What exactly are you- It ends at the spongy bone. In other words, there's spongy bone that covers the medullary canal at the top and at the bottom, but we're just talking about a hip prosthesis now, so we're just concerned with the top of the long bone. And that wherever there is- But how is that possible? The spongy bone is shown before you get to the epithecial line. So if the medullary canal doesn't go into the spongy bone, how the heck could it ever reach the epithecial portion? Because we believe, at least up here, this is a cross-sectional view, and it's basically showing a circumference. But we have other extrinsic evidence that shows that, in fact, the spongy bone, at least at the top of the bone, fills the entire cavity there, whereas here it surrounds the medullary canal. But, as we see from the extrinsic evidence and even the intrinsic evidence as well, when you prepare a long bone for surgery, you cut off the top and then you have to drill through the medullary canal. In other words, if the medullary canal, which is a canal, were co-extensive with the long bone, there would be no reason to drill through anything to get to it. It would be right there at the top. But we know from the 1985 patent suit and its teachings that when you prepare the long bone, you have to actually drill through the bone to get to the medullary canal. That is mutually exclusive with the medullary canal running the entire length of the long bone. Also, if the district court is correct and the medullary canal runs the entire length of the long bone, then the district court's construction renders the term medullary canal superfluous. The claim language specifically is transverse sectional dimensions of said medullary canal defined by cortical bone of the metaphyseal and epiphyseal segments of said long bone. If the medullary canal and the long bone were the same thing, you wouldn't need the words medullary canal in that limitation. So we know that if a construction renders a claim term superfluous, it's probably incorrect. We contend that it's incorrect here. The district court's construction, as I alluded to before, is also contradicted by how Halmedica's own literature, which we obviously acknowledge as extrinsic evidence. But if we turn to page A185 of the record, we see an excerpt from a Halmedica nursing guide. And what I'm particularly interested in is the cross-sectional depiction of the long bone on the left-hand side. And we see what's labeled there medullary canal. And Judge Moore, this goes to your question about how the spongy bone is depicted and what the judge attached to his opinion. Here we see a better representation that in fact shows- But where in this picture is the epiphyseal and metaphyseal? It's not depicted. No, it's not labeled, certainly, Your Honor. And this isn't a- And in all the other pictures, the one there, the one in the brief here, and all of the other pictures, it seems to me that the epiphyseal and the metaphyseal portions- And by the way, it seems like the district court's original quote said something about the metaphyseal being at the end of the bone. That has to be wrong, right? Isn't it the epiphyseal that's at the end of the bone? No, the metaphyseal- The metaphyseal lies between the epiphyseal and the diaphysal, doesn't it? I think if we look at this, we see the epiphyseal line here. So the metaphyseal and epiphyseal regions are here where the bone begins to flare. Show me where the metaphyseal region is. The metaphyseal region would be- Exactly, put your hands on it. It's not labeled here, Your Honor, and that's part of the problem, because we're talking about- Well, that's part of the problem in this, but the district court wasn't meaning to use this to show medullary canal, right? But that's exactly what the court appended it to show. As a matter of fact, if we look at his decision, he cites de Ross- In that original decision, was he at any place in that decision suggesting that he was doing a longitudinal analysis of where the medulla cap canal was going, or was he entirely focused on dimensions, one versus two and cross-sectional? No, no, cross-sectional was a separate limitation that he addressed- In the original opinion, isn't that what he was focused on? No, Your Honor, not in that portion of his decision. He specifically addressed medullary canal as a claim limitation separate and apart from transverse sectional dimensions. In fact, he rendered what he believed to be his definition in that first decision, and said that transverse sectional dimensions, in contrast to separate limitation, was too vague to be construed, and that was one of the subjects of the first appeal. So he very clearly was defining- Here's my problem. The picture you just directed me to on A185, I understand where you're going. You're going to show me that the medullary canal in this picture doesn't extend the entire length, right? Yes. Okay, but it also doesn't seem to extend into the metaphysial or the epiphysial portions, as I would understand them from everything you have presented to me today, and yet the claim says they must. So this picture seems to me can't be used to interpret this claim. Well, actually, Your Honor, our expert does address that, and one of the things that I wanted to talk about in part today is- But I don't need your expert, because the claim language is clear. Tell me in this claim language, which says medullary canal must be included in a portion of the metaphysial and epiphysial regions, how I'm supposed to use this picture to somehow tell me the medullary canal doesn't extend that far? Actually, it doesn't say must, Your Honor. What it says is the medullary canal and those portions of the epiphysial and metaphysial regions, what we understand- Must constitute at least 70% of the transverse sectional dimensions of the medullary canal defined by the metaphysial and epiphysial segments of the long bone, and at least 90% of the corresponding transverse sections of the long bone defined by the cortical bone of the diaphysial. So I'm hard to understand how you're- Are you telling me now that 70% doesn't include the metaphysial and the epiphysial? No, it does if the medullary canal in a particular human extends that high. That's one of the problems we're dealing with here, is we're talking about a human long bone whose dimensions, and even relative dimensions, will vary from person to person. In some people, as the Ross text suggests, the medullary canal will be in the diaphysis. In other people, especially people who are still growing, the metaphyseal and epiphysial region will contain portions of the medullary canal. Maybe I don't understand, and I definitely need you to help me clearly understand this. To the extent that this says 70% of the transverse sectional dimensions of the medullary canal defined by the cortical bone of the metaphyseal and the epiphysial, are you saying that something would fall within this claim term even if it didn't extend into any portion of the metaphyseal or epiphysial? No. If there was a human long bone in which the medullary canal is limited entirely to the diaphysis, the only limitation it would pertain is the 90% limitation. However, in most humans, the medullary canal will extend, at least somewhat, into the epiphysial and metaphyseal regions. When it does, for those segments, we have to satisfy the 70% limitation. That's clear. The dispute, however, is not whether the medullary canal ends here or here or here. The dispute is when the district court is correct that it ends here. And that very clearly is wrong. So what we are contending is that it is clear that in every human femur there is a medullary canal. In every human femur, the top end of that medullary canal will be defined by a spongy bone that entirely covers it, which you have to drill through in order to get access to the medullary canal to do an implantation surgery. And when that medullary canal extends into the metaphyseal and epiphysial regions, the fit and fill of that prosthesis and surrounding cement mantle has to be 70% of the medullary canal. I guess I thought that I understood the problem here. I mean, I just must be off the mark, and so I'm hoping you'll clarify. But I thought I understood the problem to be the district court's conclusion that the non-infringement evidence, or the only evidence of record, this video showing the implantation, didn't at all show the metaphyseal and epiphyseal regions. It was focused entirely on the center, and since the medullary canal extends up, not analyzing that as well was a dearth or deficiency with regard to proof on infringement. Am I misunderstanding? I believe so, Your Honor. What the district court did was say, well, since I found that the medullary canal runs the entire length of the long bone, and since Dr. Hopkins didn't take a measurement up here, which we agree he didn't because we don't think the medullary canal is there. Not just didn't take a measurement up there. Where exactly were his measurements for purposes of this? Well, if we take a look at— They were down close to the— Middle. Yeah, close to the edge of the top of the medullary canal, as you see it. It didn't go anywhere into what you've identified for me as epiphyseal or metaphyseal. Actually, that's not true, Your Honor. Not just a matter of it going all the way to the very tippy top. Actually, that's not true. If we look at page A69, we see that level 1 that he's describing in the paragraph Roman numeral small 4, which is pages 7 and 8 of his expert report— I'm lost. I'm sorry. Page A69, paragraph small Roman numeral 4, and actually if we turn to the next page, we see his textual description. He says, as it turns out, level 1 was indeed above the proximal end of the medullary canal, and in any event in the metadiaphyseal region of the long bone. So, in fact, he took a measurement in the metadiaphyseal region of the long bone. His measurements were not, in his opinion, limited to the diaphysis. So it is incorrect, I believe, to— But they didn't extend to the other two regions. They had nothing to do with the other two regions that we've been talking about here, right? No, Your Honor. The metadiaphyseal region basically is the other two regions we're talking about. The diaphysis is the narrow portion of the shaft here. This is where the 90%— Wait, there are three regions? Yes. And you're saying the metadiaphyseal is another way of describing the other two regions we were talking about? Yes, and it pertains to— How do we know? Where do we see that? It pertains to the same sorts of things we were talking about. It pertains to the same sorts of things that we're talking about. This is a human—it's a human long bone. So it's not like a hand where I can say at this knuckle the finger begins and the hand ends. There is no bright line that says the metaphyseal begins and ends here, and the epiphysis begins and ends here. But we do know that where we have a flare in the bone, that is the metaphyseal region we're talking about, the one we're interested in. And the epiphyseal region would be at the end, right? Yes, that's right. The metaphyseal would be between epiphyseal and diaphyseal. That's right, Your Honor. And so when he says metadiaphyseal, isn't that just combining the metiphyseal, which is in the middle, and the diaphyseal, but not including the epiphyseal? So epiphyseal is on the end. When he says, I took a cross-segment at the metadiaphyseal, that's only including two of the three regions. That's correct, Your Honor. You still haven't shown us the third region. That's correct, Your Honor, because— You're still missing a—and the third region is the end one. Because in the surgery that we're talking about, again, the surgery we're talking about involved the long bone with the medullary canal did not happen to extend that high. And that's because, again, we are talking about variability in human anatomical dimensions. Okay, thank you, Mr. Somerville.  Afternoon, Your Honors. If I may pick up right where the question, I think, left off. The observation that there are no measurements above level one. We see in the record level one, which is the first measurement— But you don't need to go to the top of the bone, do you? You need to go to the top of the implant, Your Honor. If we go back to this— No, no, no, but the district judge is concerned that we go to the top of the long bone. The top of the long bone doesn't have anything to do with the medullary canal, does it? I believe, Your Honor, that what the district court was concerned with, he did say the full extent of the long bone. Yes, and I'm not interested in what he was concerned with. I'm interested in what he said. He did say— He said he wanted to go to the top of the long bone. That can't be right, can it? To the very top of the long bone, if we're going to include, for example— Well, this is not a— There's no medullary canal in anybody that goes to the top of the long bone. So that's just a mistake, right? No, there is not. But if we look at what we contend the issue really is here, Your Honor, the issue as framed by Mr. Summerfield is where's the medullary canal. We disagree. The issue is where is the medullary canal for purposes of this patent. And without resort to any extrinsic evidence, on the intrinsic evidence alone, much of which was recounted by this court in its original decision, we know that this invention— and this is quoting from this court's original opinion— is rooted in the recognition of the importance and criticality of the stem's transverse direct sectional dimensions along the entire length of the stem. We care about the stem. And while it may be that the bone— But the district court seems to have knocked out all chance for proof because they don't go to the top of the bone. And we all agree that can't be the medullary canal. I mean, your own nursing guide here on page 185 stops a long time short of the top of the bone for the medullary canal. Your Honor, I don't believe that Judge Sharp knocked out all chance because we didn't go to the top of the bone. I would submit, Your Honor, that if we accept everything— Well, if we go back and we tell the district judge, first define where the marrow cavity is, and then work with that, because after all, that's the term in the patent, medullary canal. Well, it's not the only term in the patent, Your Honor. I understand. The patent also, if we look at other intrinsic evidence, claim 7. We could look at claim 7 for a moment, and I think it is certainly fair game for the court in construing claims to look at other claims. Interestingly, in claim 7, and this you can find in the patent. This is at column 10, lines 35 through 43. In a limitation, claim 10 differs in scope from claim 7. I'm sorry, from claim 1 for other reasons. It's the precoded stem. But when it comes to the issue of meeting the 70% limitation and the 90% limitation, never mention the medullary canal. There's nothing in the patent to suggest that Dr. Holmesy— we're talking about what Dr. Holmesy said, Your Honor. Dr. Holmesy referred throughout his patent, used interchangeably the extent of the stem, the extent of the long bone, the extent of the medullary canal, and invariably referred to them in the same fashion. He was concerned with the tight fit. That's what this court said. Any construction that doesn't result in the tighter fit can't be the right construction. That was the basis upon which the court reversed the first time. So are you saying that this— in order for there to be infringement, it has to go into 70% of the canal in the metaphysial and epiphysial regions, and therefore the canal must extend into those regions? Your Honor, that's only part of what I'm saying. Let's just take the diaphysial region. But let's just stick with this for a minute. So what if a person doesn't have a medullary canal that extends into the metaphysial and epiphysial region? I imagine that you would agree that from person to person there could be some variation. Again, Your Honor, that suggests— and this is the distinction I'm trying to draw— between a definition of medullary canal for an anatomy class and what Dr. Holmesy said for purposes of this patent. Here, this is a classic case of a patentee becoming his own lexicographer. Throughout the intrinsic evidence— But the patent would have no meaning if we decide that the long bone— if the canal goes all the way to the top of the long bone, of course you're not going to reach 70% of the big knob that fits into the hip socket. But, Your Honor, you would. Would you ever? You wouldn't need to because the point is we're concerned with the tight fit of the stem. If we at least concern ourselves— No, but that's not what the district court's requiring. The district court is requiring literal compliance with the 70% at the top of the long bone. Well, Your Honor, let's— And that can't be right, can it? Even if that's incorrect, Your Honor. That'd make this like Chef America where the patent wouldn't have any meaning at all. Your Honor, in this particular instance, we have to look at whose burden it was to prove enough facts to get to a fact finder. We have a circumstance where the first measurement taken is 7 to 8 centimeters from the collar. I'm with you on the theory. I'm just not—I think once we have an error in where you're measuring and how much you have to do at that point, we have a problem, don't we? Don't we have to be measuring at the proper place? Well, Your Honor, forget it. You'll bear with me. Okay. Let's forget the metaphyseal and epiphyseal segments. Let's accept what Mr. Summerfield says, that the only thing we care about is the diaphyseal segment, which according to Mr. Summerfield— I don't think he said that. I don't think he said that, but go ahead. He said it just doesn't—it can't go into the spongy bone. He said it doesn't go into metaphyseal. Let's look at what did happen here. We know that level 2 has been argued to be within the medullary canal, within the diaphyseal region, and there was this argument about whether 84.4% is around 90. Let's accept that it's even correct, that it is around 90. Where the medullary canal ends has been a moving target in this case. First, we heard that in rare instances, Dr. Hopkinson told us, not the average femur, the medullary canal would extend into the metaphyseal region. He referred to a metaphyseal region. No support anywhere for that term. Then we have an argument that sometimes it will be there. Now we have Mr. Summerfield saying more or less what he said in the gray brief, which is often it will. But at a minimum, we have Dr. Hopkinson telling us, if we accept Dr. Hopkinson at all, which is an unsworn expert report, but we'll leave that to the side. If we accept what Dr. Hopkinson says, level one is what he says is at the proximal end of the medullary canal. In which case, everything below that would be part of the diaphyseal region. If it's part of the diaphyseal region, and we have no data whatsoever, not a single point, after this court found, first time around, that to prove infringement, you must meet the percentage limitations for each region, and I'm only focusing on the diaphyseal now, for each region substantially along its entire length, if we accept that we're going to ignore 7 to 8 centimeters, a third to a half of this entire implant, which isn't going to give you a tight fit if you do that, we still have nothing. We have an utter failure of proof. Are you arguing harmless error then? Is that what you're saying? The judge measured, required something that should not have required, but it still doesn't make any difference. Is that your point? I believe on this record, Your Honor, that the decision can be affirmed on several grounds. We have a complete failure of proof. There was no effort to go back after this court's decision and take more measurements. Nothing stopped them from doing that. There was nothing to stop them from actually having Dr. Hopkinson's report submitted as a sworn affidavit of motions for summary judgment, and we cited it in our brief cases that fully support what the district judge had to say about that. Now, to his credit, he said, I could decide the case based on precedent by just ignoring all of that, but he didn't. I believe that there are at least two alternative grounds to upholding the decision here. One is that even if he was requiring all the way to the top of the bone, we still don't have any measurements between the collar and here. And again, what this court found, and it couldn't have been more clear, Your Honor, this court found that we are concerned, that Pat is concerned with the criticality of the tight fit of the stem throughout the stem's entire length. We don't know a thing about what happens between level one and the collar. We know, for example, and I'm reading from Your Honor's opinion in the original appeal, references made is rooted in the recognition and the importance of the stem's transverse sectional dimensions along the entire length thereof relative to the corresponding sectional dimensions of the medullary canal. What that implies at the very least, Your Honor, is that the medullary canal, for purposes of this patent, if not coextensive with the long bone, which is what Claim 7 suggests to us, it is at least the medullary canal for this patent is coextensive with the entire stem. Because if it's not, if all we're going to focus on is what happens in a small portion here, and not be concerned with any coating up here, and by the way, the patent tells us in a number of places that we're going to coat the whole stem. I think what the Federal Circuit said, though, is the corresponding parts of the medullary canal. So it's still the medullary canal we're worried about, not the top of the long bone. But corresponding to what, Your Honor? Corresponding to the stem's transverse sectional dimensions. I would submit, Your Honor, that Well, this issue wasn't the issue at that time anyway. No, it was not. And actually, as Judge Moore pointed out, the issue at that time really was the transverse extent. The reference to Moore stemmed from a dispute between the parties over what's the ratio, how do we calculate the ratio. So did you take this statement of the Federal Circuit and go back and say, oh, now they have to go to the top of the long bone because the Federal Circuit made a finding that wasn't at issue? Is that what you did? No, Your Honor. I would suggest if we look at the original district court decision, and it's on page 944 of that decision, what Judge Sharp said the first time around before he got into the whole discussion of Ross, he said, the claim language of the 985 patent defines the medullary canal by the cortical bone of the metaphyseal and epiphyseal segments of the bone. There's no question that Dr. Holmesie told us the bone has it. Let's look at the patent itself, Your Honor. The patent says, and this is Dr. Holmesie speaking, he refers to the canal defined by the endosteal or inner contour of dense hard cortical bone for metaphyseal and epiphyseal segments of a typical long bone. Every place in the patent, without any wavering, Dr. Holmesie tells us that for his patent, he reads them the same. Compare Claim 1 to Claim 7. It's the long bone. I believe, Your Honor, that the reference to extending the entire length of the long bone may have been an artful. I believe what it was intended to refer to at an absolute minimum, Your Honor, was at least the entire length of the stem and at least as much of the long bone that is occupied by the stem. Otherwise, we have nothing that purports to be an invention here. If this court found something more clearly, I don't know what it is. And this court said, this invention is rooted in the recognition that we need a tight fit and specifically said, Your Honor, that any construction, any construction that leads to a different result can't be the right one. We need the construction. Is this imprecise? Perhaps. But again, Your Honor, if we hold Judge Sharpe to a requirement, and I don't believe he fully required, I don't think he was saying, because you don't have anything up here you lose. They didn't have anything from level one all the way up to here. It wasn't up here that he was concerned about. They had nothing in here, and they had nothing in here, Your Honor. And we haven't even touched on the 84. We know, for example, Your Honor, we are to assume anything. We know, given the way this is working, that if this is 84.4% and this is 70.33%, it's decreasing rapidly. And they would have the court accept that 84.4% is around 90 and that perhaps something in the middle at 76%, where we don't have anything at all, would also be around 90. And, Your Honor, I would also just suggest if you want to see just how unreliable all the measuring is, we know that the entire virtual surgery was done with a virtual bone. There was no reaming. There was no rasping. And if you want to see just how unreliable it is, Your Honor, I would respectfully direct everyone's attention to page A86. A86 of the appendix, which is the last page of the virtual surgery. And what we see is that level 5 gets a percentage of 122%. Now, you might ask, how is that possible? It's possible because we're not dealing with real bones. We're dealing with a virtual surgery. We're dealing with, you can position that stem any place you want. This is not the stuff that infringement proof is made of, Your Honor. They tell us nothing about the other stems. They put the virtual surgery up. They take no measurements. Even what they concede is the diaphysial, despite the admonition of this court, that you must prove that you meet the percent of the only focus on the diaphysial region. They still haven't proved that substantially along the length of the diaphysial, and between level 1 and 2, they concede we're still in the diaphysial. They don't have any evidence, and that would be more than a sufficient basis for this court to decide. Lastly, again, I will simply end by saying, Your Honor, whether Judge Sharp said long bone, and I think there's some language in Claim 7 that justifies that, I think a fair reading of his opinion in the context of Dr. Holmes' patent and everything the man had to say, is it's at least the part of the bone that the stem occupies. Otherwise, it's not even clear what this invention could possibly be about. Thank you, Your Honor. Thank you, Mr. Mentlich. Mr. Summerfield, you have 37 seconds remaining. I'll give you a minute, maybe. Thank you, Your Honor. Well, I heard Mr. Mentlich say a couple of interesting things. Number one, he agrees the medullary canal does not extend to the top of the long bone, and since the district court's decision depended on that construction, it was erroneous. Number two, Mr. Mentlich criticizes Trample for not taking any measurements above level 1. However, if we look at... Isn't there a failure of proof anyway, based upon what Mr. Mentlich just told us about the lack of any measurements between level 1 and level 2, and 84 is already getting a ways away from 90? A couple of responses to that, Your Honor. First of all, the 84% argument assumes that about is no longer in the claims. Number two, everything Mr. Mentlich said about the variation in measurements between level 1 and level 2... We're not talking doctrine of equivalence here. You're already a ways away from 90 at 84. But it says at least about 90%. About is pushing it at 84, isn't it? It says at least around. At least around 90%. But you're still pushing it there at 84, aren't you? But that's an issue of fact at that point, Your Honor. In other words, to say that while... At some point, we step in and say the facts are insufficient, don't we? We can do that on a summary judgment. Why can't we do it here? Maybe you can answer that, and that'll be your final word. The answer is because there's absolutely no countervailing proof at all that it's not about 90%. They have no evidence of what measurements would have been, why 84% is not at least around 90%. We have an expert who says it is. And this was a summary judgment motion. This wasn't a trial with a jury verdict where they heard both sets of evidence. There wasn't any evidence from how Medica could hear. They didn't do any measurements below level 1, none. So everything you heard Mr. Mentlich say about what's between level 1 and level 2 was pure speculation, attorney argument, without any record support at all. Our expert concluded that all those limitations were met at all those levels and everything else. Thank you, Mr. Summerfield. All rise.